IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BEATTY CARIBBEAN, INC.,

  Plaintiff,

  v.                                    CIVIL NO. 08-2259 (ADC-CVR)

NOVA CHEMICALS, INC.,

  Defendant.

## OPINION AND ORDER

## INTRODUCTION

This action was filed under diversity jurisdiction wherein plaintiff Beatty Caribbean Corporation (hereafter "Beatty"), is a corporation with its principal place of business in Puerto Rico and defendant NOVA Chemicals, Inc. (hereafter "NOVA") is a corporation with its principal place of business in the state of Pennsylvania. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Puerto Rico was selected as the venue for this action because plaintiff Beatty alleges the principal events giving rise to this case occurred in this judicial district, in violation of the Puerto Rico statutes Law No. 75 and No. 21, respectively, 10 L.P.R.A. §278 *et seq.*; and 28 U.S.C. §1332.

On November 3, 2008, Beatty filed a Preliminary Injunction and Complaint claiming defendant NOVA has impaired the distribution agreement entered into with Beatty as of the beginning of the 1990's for the sales and marketing in Puerto Rico and the Caribbean (including Jamaica, Haiti, Trinidad & Tobago, Dominican Republic and Barbados) of chemical products, including since 1995 expandable polystyrene also

Beatty Caribbean, Inc. v. NOVA Chemicals, Inc.
Civil No. 08-2259 (ADC-CVR)
Opinion and Order
Page 2

known as Dylite or in general "EPS"[1] after asset purchase acquisition of ARCO Chemicals (hereafter "ARCO"), the previous producer of EPS and/or Dylite (the "Asset Purchase Agreement"). Since 1973, Beatty was in a business relation with ARCO.

Beatty avers that NOVA's decision to reduce the commission paid to Beatty from the five percent (5%) previously paid to the three percent (3%) to begin on July 1, 2008 was done without "just cause" and hindering on the benefits from the successfully established market Beatty had created over the years pursuant to its verbal agreements with ARCO and with NOVA.  Plaintiff Beatty considers this action a violation of the provisions of Puerto Rico's Law 75, 10 L.P.R.A. §§ 278 *et seq.* and/or Law No. 21. (*Complaint, Docket No. 1*).

On December 19, 2008, defendant NOVA filed its answer to the complaint and a counterclaim alleging its acquisition of ARCO's assets did not change or alter the terms and conditions of a 1984 Sales Representative Agreement between Beatty and ARCO. (*Answer, Docket No. 14, ¶5*).  It specifically admitted notifying Beatty, through a letter of April 22, 2008, its intention to reduce Beatty's sale commission for the Caribbean from five percent (5%) to three percent (3%).  (*Id. ¶10*).  NOVA also raised as a defense plaintiff Beatty is not protected under the Puerto Rico Sales Representative Act, Law No.

---

[1] Polystyrene or polyethylene is a plastic polymer that is sold in solid, as little pellets, and the molder or the user of the product would melt it and then form some type of a solid item with it, could be a plastic toy.  Expandable polystyrene (hereafter "EPS") is unique in that it is a solid polystyrene but in each side there is a blowing agent and when the material is processed with steam, it puffs up and then it is again processed with steam in a mold to take any shape. (Commonly referred as styrofoam, which is a DOW trade name for a particular product for construction).

21, nor under the Puerto Rico Dealers' Act, Law No. 75.  *(Id. pp. 5-6)*.  A counterclaim also filed on said date arises from Beatty's claim of being a dealer and/or sales representative protected under Law No. 75 or Law No. 21 and thereunder NOVA seeks a declaratory judgment as to the fact that Beatty be considered a non-exclusive sales representative on commission for NOVA's products EPS and which agreement was entered into prior to the enactment of Law No. 21.

On January 8, 2009, Beatty answered the counterclaim. (Docket No. 15).

This matter came initially before this United States Magistrate Judge upon the Court's referral on November 6, 2008 for an evidentiary hearing and report and recommendation regarding the issuance of a preliminary injunction. (Docket No. 4).

Upon a status conference held before this United States Magistrate Judge on November 24, 2008, the preliminary injunction hearing was initially set.  On December 1, 2008, the parties consented to proceed before the undersigned United States Magistrate Judge for all further proceedings and the Court granted same on even date. (Docket Nos. 10, 11).

On May 8, 2009, defendant NOVA filed a memorandum in opposition to plaintiff Beatty's  preliminary injunction request which the record shows was duly notified to plaintiff Beatty's counsel.  No reply was filed by Beatty.  (Docket No. 24).

After the parties sought several continuances, the evidentiary hearing on the preliminary injunction was held on May 18-19, 2009.  The parties presented the testimony of witnesses and documentary evidence in support of their respective positions.

Beatty Caribbean, Inc. v. NOVA Chemicals, Inc.
Civil No. 08-2259 (ADC-CVR)
Opinion and Order
Page 4

The witnesses for plaintiff Beatty included its principals, namely, Mr. Leslie J. Beatty, as President of Beatty and Mr. James Beatty, General Manager, Sales Manager and Administrator of Beatty.   Witnesses for defendant NOVA were Mr. Frederic Susamy, Sales Manager for Latin America and the Caribbean, Mr. Robert Stoffa, National Account Manager, Mr. Juan Carlos Avila, Sales Development Manager for Latin America for the EPS business and Counsel Claudia Ann García, in-house attorney and custodian of documents for NOVA.

After carefully considering the testimonies and documentary evidence presented, this United States Magistrate Judge enters this Opinion and Order DENYING plaintiff Beatty's request for preliminary injunctive relief.   As explained in detail herein below, we find plaintiff Beatty has established at least the minimum, namely, that defendant NOVA has impaired their commercial relationship by its unilateral determination to decrease the sales commissions previously paid.   However, Beatty has failed to establish, by a preponderance of the evidence, that it will suffer irreparable injury if the injunction is not granted.   Thus, as further discussed below, the preliminary injunction is not warranted upon two of the four requisites to grant same, irreparable harm and the balancing of the equities, have not been established.

## FINDINGS OF FACT

Based on the testimonies and evidence presented at the hearing, this United States Magistrate Judge makes the following findings of fact:

1.      Beatty Caribbean, Inc., is a Puerto Rico corporation since January of 1973, with Mr. Leslie J. Beatty, President, and Mrs. María Ezaria de Beatty, Vice-President, as incorporators and shareholders.

2.      Beatty represents some nineteen (19) companies in North America, Western Europe, Puerto Rico and the Caribbean islands, except Cuba, in the sales of NOVA's  products and it handles its line of products for which it receives a commission for its efforts in the territory of Puerto Rico and all the islands in the Caribbean, except Cuba.

3.      Among the companies represented by Beatty are Amaco Chemicals, ARCO Chemicals, NOVA Chemicals, Inc., among others.

4.      Beatty has represented ARCO Chemicals since 1973.

5.      Beatty has been representing NOVA Chemicals since the early 1990's for a source and supply of polyethylene resin, polystyrene resins and other plastic resins.

6.      No written agreement was signed between Beatty and NOVA.   Their relationship was based on a verbal agreement which was never reduced in writing.

7.      During all the years doing business, Beatty has been the sole representative for the particular products within the specified territories, to wit, Puerto Rico and the Caribbean islands.  Up until recently, NOVA had not appointed another distributor for the products in Beatty's described territory nor had NOVA attempted until recently to sell directly NOVA's products in the territory.

Beatty Caribbean, Inc. v. NOVA Chemicals, Inc.
Civil No. 08-2259 (ADC-CVR)
Opinion and Order
Page 6

8.    NOVA did not have a market for Puerto Rico or the Caribbean islands when Beatty started doing business with said company and NOVA was not selling any of its products in the Caribbean islands in the expandable polystyrene and/or Dylite.

9.    Mr. Leslie J. Beatty testified his recollection of having reached a verbal agreement with NOVA in the early 1990's with Mr. George Pan.

10.   Beatty was to buy the products from NOVA at the agreed upon price, net, arranged for the shipment to its customers in its territory, at times undertook credit risk, and once collected, paid NOVA.

11.   When a customer would call NOVA for information about a product, NOVA would tell the client that Beatty was the distributor in the Caribbean and provide its name and notify Beatty, who in turn would contact the prospect client.

12.   The center of operations for Beatty for all the work in selling the products is San Juan, Puerto Rico, where its offices are located.   All administrative and communications, as well as travel out to conduct sales, purchases, billings and collections are carried out from Puerto Rico.

13.   From early March 2002 up to the present time, billing is done by NOVA. Prior to that date, the billing was done by Beatty as to the Dominican Republic.

14.   Since the beginning of the relationship between Beatty and Nova, as well as with ARCO, the commission received for the sales of the products has been five percent (5%).  The recent value per year has been approximately $200,000.00.

15.   Since the early 1990's, the work done by Beatty for NOVA's products entails developing the market, seeking new clients, making sales, and monitoring and

arranging shipments.  It formerly made collections for NOVA in the Dominican Republic, as well as submit quotations in standard NOVA Chemicals' *pro-forma* invoice and handle claims.  Beatty was not paid separately for those works that involve collections and handling claims.

16.    Beatty also represented ARCO Chemicals since about 1970, for the purchase and sale to customers in the territory of polyethylene, polystyrene, expandable polystyrene, among others, on the basis of a verbal agreement until 1984.

17.    ARCO had no other distributors in Beatty's territory.

18.    In 1984, there was a written one year non-exclusive agreement between ARCO and Beatty.  After expiration of the one year written contract, the parties continued operating under the same conditions, being Beatty the sole distributor in the territory of ARCO's EPS products under as a five percent (5%) commission. **Joint Exhibit 1, Sales Representative Agreement.**

19.    The 1984 written contract was never renewed in writing.

20.    In 1996, NOVA acquired all assets of ARCO.   **Exhibit D, Asset Purchase Agreement**.

21.    At no time was Beatty informed by NOVA that it was operating under a written contract previously with ARCO in 1984 nor that said contract had been assigned and/or transferred.

22.    Beatty and NOVA continued doing business as usual pursuant to their relationship which started in the beginning of the 1990's, except that in 1996 it added the product of Dylite that NOVA had acquired from ARCO and a five percent (5%)

commission was being paid.  Before the Asset Purchase Agreement between NOVA and ARCO, NOVA did not manufacture nor sell expanded polystyrene.

23.     Around October 16, 2007, Mr. Juan Carlos Avila from NOVA requested Beatty for copy of any written agreement for sales agency in the Caribbean between Beatty and NOVA.  Mr. Leslie Beatty's reply was there was only a formal agreement dated November 8, 1984, between ARCO Chemical and Beatty and provided a courtesy copy.  Mr. Leslie Beatty did not tell Mr. Juan Carlos Avila that it was the agreement between Beatty and NOVA.

24.     On February 13, 2008, NOVA informed about a prior conversation in regard to a change of commissions paid for all NOVA's products to Beatty from five percent (5%) to three percent (3%) starting on July 1, 2008.

25.     On April 22, 2008, NOVA informed by letter to Beatty it was to reduce the five percent (5%) commission to three percent (3%) effective July 1, 2008, therein providing some reasons for said decision.  **Joint Exhibit 6.**

26.     Several correspondence was exchanged between NOVA and Beatty in 2008 related to the reduction of commission from five percent (5%) to three percent (3%) starting on July 1, 2008, as to which Beatty did not acquiesce.  **Joint Exhibits 2, 3, 4, 5, 6, 7.**

27.     Beatty had agreed with NOVA that effective July 1, 2008, on a provisional basis, it would receive a commission of only three percent (3%) with the understanding the other two percent (2%) would be set aside and be paid at an appropriate time.

Beatty Caribean, Inc. v. NOVA Chemicals, Inc.
Civil No. 08-2259 (ADC-CVR)
Opinion and Order
Page 9

28.    Beatty assumed the credit risk for products sold in the Dominican Republic for the sale of NOVA's products to customers and bought and sold EPS with its own account.  Beatty became indebted to NOVA, around February and March of 2002, for over $300,000.00.

29.    To pay its debt to NOVA, which could have placed Beatty in bankruptcy, it was arranged, to continue working for NOVA for payment of the indebtness and interest for over a period of two and a half years (2 ½).

30.    Mrs. Debra Harris, Credit Manager for NOVA, sent a note on February 25, 2005, showing Beatty had fulfilled payment of an outstanding debt with NOVA which had resulted from its sales of NOVA's products in the Dominican Republic.  In said note, Mrs. Debra Harris also informed Beatty the status had been changed from a distributor earning of six percent (6%) to an agent earning a five percent (5%) straight commission. **Plaintiff's Exhibit 8.**

31.    Beatty presented a list of some sixteen (16) of its clients for EPS which include clients in Jamaica, the Dominican Republic, Puerto Rico and Trinidad representing companies which buy NOVA's products in Puerto Rico and the Caribbean. **Plaintiff's Exhibit 8.**

32.    Beatty provided full service distributor services for the Caribbean for NOVA's products, which included to promote, sell, market, collect, handle claims, since back in the early 1990's.

33.    NOVA had no other distributors in the territory handled by Beatty and all dealings and business were channeled and handled by Beatty, including all inquiries

Beatty Caribeean, Inc. v. NOVA Chemicals, Inc.
Civil No. 08-2259 (ADC-CVR)
Opinion and Order
Page 10

which would come through media, channels, magazines, trade magazines and afterward through the internet.

33.     The commission reduction by NOVA from five to three percent (5% - 3%) at issue results in a reduction of forty percent (40%) of the total commissions made by Beatty in its sale of products, mostly in the Dominican Republic.  It would be almost as having no profit in it. Expenses incurred in Puerto Rico include utilities, communication and real estate, and travel expenses outside Puerto Rico for other parts of the territory, which is very touristy in nature and for which reason hotels and flights are very expensive.

During NOVA's cross-examination and the presentation of its own evidence, it showed that:

1.     Any conversation Mr. Leslie Beatty may have had with Mr. George Pan regarding NOVA's products in the early 1990's would not entail EPS and/or Dylite since this was manufactured and owned by ARCO and not by NOVA at the time.

2.     Mr. Leslie Beatty testified that its relation with ARCO before and after signing the 1984 agreement pretty much continued to be the same.

3.     Mr. Beatty acknowledged that, under a sales agreement with NOVA, Beatty was not required to have any inventory of products it was authorized to sell, that products were delivered to customers directly, including those in the Dominican Republic.

4.     Mr. Fred Susamy's testimony established he held primary function for NOVA to market EPS in the Caribbean after NOVA acquired ARCO and EPS sales

activities started.  He was instructed by Mr. Grant Thomson, EPS Director at NOVA, to continue operation in a seamless transition and had met with people at ARCO to obtain information about details of the markets they were involved, customers, commissions, which included Puerto Rico.  Thus, upon the assets purchase of ARCO, NOVA took on the sales representatives and carried out business under the same terms and conditions so as to effect the seamless transition.

Mr. George Pan was at the time, according to Mr. Susamy, part of the International Group of NOVA Corporation, Sales Manager, which is a different company from NOVA Chemicals.  Mr. Pan could not have entered into a verbal agreement with Beatty.  In addition, the former corporation only handled polyethylene not EPS.

Mr. Susamy also testified that during his tenure at NOVA, Beatty was acting as sales representative for NOVA insofar as EPS, for the territory of primarily Trinidad-Tobago, Puerto Rico, Jamaica, and the Dominican Republic.  (*Trans. 5-18-2009, pp. 89-90*).  Beatty acted as sales representative on an end-end basis markets for NOVA, except for the Dominican Republic, for which the relation was different, being a buy and sell arrangement.  (*Id. p. 91*).[2]

Even when customers would have direct contact with NOVA, including those in the Dominican Republic, NOVA made it a point to keep Beatty informed of such visits.  (*Id. p. 92*).

---

[2]  End-end basis means that NOVA would sell to the customer, ship to the customer, invoice the customer, and Beatty would receive a commission.  For the buy-sell arrangement, which applied to the Dominican Republic, NOVA would ship directly to the Dominican Republic, but would invoice to Beatty, and Beatty in return, would invoice the customer and then upon its collection, subsequently transfer the funds to NOVA.

5.      Beatty's sale arrangement with NOVA for the Dominican Republic since 1997 changed on account of having encountered in 2003 serious payment delays, with an outstanding debt of around $350,000.00, and having to cut off shipment of products.   A new *modus operandi* ensued wherein NOVA would ship directly to customers in the Dominican Republic and bill them directly, instead of billing Beatty. Beatty repaid its debt around March or April of 2005.  (*Trans. 5-18-2009, pp. 93-94*). Having Beatty defaulted on the payment terms, its status was changed from a distributor to agent, thus making a change from buy/sell to end-end arrangement as to the products sold in the Dominican Republic.  There was never a buy/sell arrangement as to Puerto Rico.  (*Id. pp. 96-97*).  Beatty continued to act as a sales representative for Puerto Rico and there was never any change in the arrangement for Puerto Rico.  (*Id. p. 97*).  Mr. Susamy retired from NOVA in 2005 and by the early 1990's he was working for Dupont, having joined NOVA in 1995, not having particular knowledge as to when the relation between Beatty and NOVA nor under what terms had started.  (*Id. pp. 100, 102*).

6.      Mr. Roberto Stoffa, held a position at ARCO as National Accountant Manager since around 1995 up until the acquisition of ARCO by NOVA.  In ARCO, Mr. Stoffa dealt with expandable polystyrene and/or EPS.  Mr. Stoffa met with Mr. Beatty probably during 1995 for a social gathering upon knowing that the Beatty's had represented Puerto Rico and was the sales representative for EPS in the Caribeean. (*Trans. 5-18-2009, p. 108*).   Mr. Stoffa was unaware of the specific business terms between Beatty and ARCO.  He became aware of the commercial dealings between

ARCO and NOVA around 1996 when NOVA acquired ARCO's styrenics business under a complete assets sale.  (*Id. p. 109*).  The instructions were that, once the deal was completed, their disciplines were seamless and everything that took place at ARCO should the next day take place the same as NOVA.  All agreements were as-is, transferred to NOVA. *(Id. p. 110)*.  These instructions were issued by Mr. Alan Kornfeld. Mr. Stoffa was then appointed through other transactions and acquisitions by NOVA to deal with global business director for the foam cup business and Mr. Susamy remained responsible at NOVA for dealing with Beatty.  (*Id. p. 111*).  Beatty was reassured that the relationship that ARCO had would continue with them as NOVA.  (*Trans. 5-18-2009, p. 112*).  Mr. Stoffa had no knowledge as to a verbal agreement with Beatty that NOVA may have had in the early 1990's.  (*Id. pp. 114-115*).

7.    Mr. Juan Carlos Avila began working for NOVA in 2006 as Sales and Development Manager for Latin America for the EPS business.  The Asset Purchase Agreement between ARCO and NOVA is dated September 30, 1996.  Mr. Avila requested copy to the legal department.  Afterwards,  he started to talk to Mr. Beatty back in 2007, when all agents and representatives in the region were asked to send updated information in terms of what kind of documents were ruling NOVA's relationship. Beatty was acting as NOVA's sales representative for EPS product for Puerto Rico, the Dominican Republic, Trinidad, Jamaica, and some other islands in the Caribbean with a five percent (5%) commission level.  (*Trans. 5-18-2009, pp. 124, 136-137*).[3]

---

[3]   Counsel Claudia García was subsequently examined as custodian of the document for authentication.

Mr. Avila testified NOVA's policy is not to engage in agreements that are exclusive in nature and all its agreements with other representatives, distributors, and third-party services are on a non-exclusive basis.  (*Id. p. 138*).  Beatty is still acting as the representative of polystyrene product, EPS.  (*Id. p. 140*).

Insofar as the business relation, Beatty has no authority to: sign contracts on behalf of NOVA, change the terms of sales for NOVA's products, change the sales terms on behalf of NOVA, and expand credit on behalf of NOVA.  There is no requirement that Beatty is to keep an inventory of NOVA's products and have a warehouse.  Beatty has no control over the pricing of NOVA's products.  (*Trans. 5-18-2009, pp. 141-142*).  Since NOVA's old record of about six years, which it is obliged to keep, the transactions conducted with Beatty showed a five percent (5%) had been paid.  (Id. p. 146).  At the present time, Beatty's percentage of products for the Puerto Rico market is quite small, less than one percent (1%) of its sales, being the largest share of business the Dominican Republic, with approximately seventy five percent (75%) and the remaining in the islands of Trinidad and Jamaica.  (*Id. p. 147*).

Mr. Avila indicated that in early 2008 it asked Beatty to accept a commission reduction from five percent (5%) to three percent (3%) for several reasons, including that EPS business was underperforming, NOVA had undergone a reorganization and lay-offs, and everywhere else a three percent (3%) commission was paid and needed to bring parity to the market.  (*Id. p. 148*).

Mr. Beatty objected to the decrease in commission and at the beginning did not specifically invoke any contract or reason; rather that it was the commission rate that

was agreed and that he wanted.  (*Id. p. 150*).  Later on, Mr. Beatty sent copy of an

agreement with ARCO Chemical indicating a five percent (5%) commission.  (*Id. p. 151*).

        Mr. Avila further testified NOVA did not know the extent of the 1984 written

agreement with ARCO and Beatty nor its details, for which Mr. Avila verified with its

legal department which reviewed the 1984 agreement in conjunction with the asset

purchase agreement and concluded NOVA was bound by that agreement.  *(Trans. 5-18-*

*2009, p. 154)*.  Mr. Avila had requested copy of the agreement to Beatty because NOVA

had no copy of same.  (*Id. p. 158*).  When Mr. Avila received the copy of the 1984

agreement, Avila noticed the expiration date of one year.  (*Id. p. 159*).  The initial

conclusion about the written agreement was the legal department was having serious

doubts whether it was acceptable or not for NOVA.  Further research and check with

counsel here in Puerto Rico, as it pertained to this case, determined the asset purchase

agreement actually covered the fact that contracts that ARCO had before acquisition by

NOVA were actually transferred to NOVA in the same terms and conditions.  (*Id. p.*

*163*).

        8. Counsel Claudia García, in-house counsel and custodian for NOVA, testified

initially for admission of the document identified through Mr. Avila's testimony as asset

purchase agreement.  On cross-examination, Atty. García indicated the asset purchase

agreement contained an addendum with a list of the contracts that were assigned from

ARCO to NOVA.  The ARCO-Beatty 1984 written agreement could not be located in said

list composed of some two hundred thirty five (235) contracts.  (*Id. p. 169*).  On re-

direct, Atty. García indicated any agreement and arrangement which are terminable by

the seller or the transferring affiliate on not more than ninety (90) day notice, would not be included in the list.  (*Id. p. 177*)

## LEGAL DISCUSSION

Plaintiff Beatty claims in its Preliminary Injunction and Complaint that defendant NOVA's actions in reducing the commission of a five percent (5%) to a three percent (3%) are a violation of  the provisions of Puerto Rico's Law 75, 10 L.P.R.A. §§ 278 *et seq.* and/or Law No. 21.  Thus, we need to address plaintiff's request for a preliminary injunction and the pertinent factors for granting a preliminary injunction in light of these two statutory provisions.

## I.    Standard for Injunctive Relief.

A court presented with a request for preliminary injunction must normally assess the following four factors:  (1) whether a plaintiff will suffer irreparable injury if the injunction is not granted; (2) whether such injury outweighs any harm which granting injunctive relief would inflict on a defendant; (3) whether a plaintiff has demonstrated a likelihood of success on the merits; and (4) whether the public interest will not be adversely affected by the grant of an injunction.  *See generally* Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1ˢᵗ Cir. 1991); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1ˢᵗ Cir. 1990); K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914-915 (1ˢᵗ Cir. 1989).

In reviewing a request for injunctive relief made under Law 75 and/or Law 21, a court should consider the merits of a plaintiff's action will affect its interpretation of the parties' interests and the requested injunction's effect on Law 75's public policy.  *See*

Pan American Computer Corp. v. Data General Corp., 652 F.2d 215, 217 (1st Cir. 1981).

The traditional equity tests for a traditional injunction should be "tempered for purposes of [Law] 75." Systema de Puerto Rico, Inc. v. Interface Int., Inc. 123 D.P.R. 379 (1989).

The Puerto Rico Dealers' Act, 10 L.P.R.A. § 278b-1, gives a court broad discretion in affording an injured dealer or distributor provisional remedies. As the Court of Appeals for the First Circuit pointed out in Re-Ace Inc. v. Wheeled Coach Industries, 363 F.3d 51, 54 (1st Cir. 2004), quoting from 10 P.R. Laws Ann. § 278b-1 (Article 3A):

> In any litigation in which there is directly or indirectly involved the termination of a dealer's contract or any act in prejudice of the relation established between the principal or grantor and the dealer, the Court may grant, during the time the litigation is pending solution, any provisional remedy or measure of an interdictory nature to do or to desist from doing, ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and/or to abstain from performing any act or any omission in prejudice thereof. In any case in which the provisional remedy herein provided is requested, the Court shall consider the interests of all parties concerned and the purposes of the public policy contained in this chapter.

Notwithstanding general requisites for injunctive relief, under Law No. 75, there is no need for a plaintiff to make any showing it will suffer irreparable harm in order to obtain provisional relief. DeMoss v. Kelly Services, Inc., 493 F.2d 1012, 1015 (1st Cir. 1974). See Aybar v. F. & B. Manufacturing Co., Inc., 498 F.Supp. 1184, 1190 (D. Puerto Rico 1980). Still, nothing in the Puerto Rico Dealers' Act says that it may not ever do so since the court is to look to both parties interests and to the Act's public policy. It must

be showed only public policy favors its injunction, and the balance of the equities is in its favor, *i.e.*, it will be harmed more by the denial of injunctive relief than the defendant will be by the granting of such relief.

## II.     Whether Plaintiff Beatty is Entitled to the Provisional and Injunctive Relief Sought.

### a.     Likelihood of Success on the Merits.

A careful review of the evidence presented at the hearing shows the testimonies presented by plaintiff through Mr. Leslie Beatty and Mr. James Beatty regarding the previous business relations with both ARCO and NOVA were not rebutted by defendant NOVA's witnesses. As such, *prima facie*, plaintiff Beatty was able to establish, at this stage of the proceedings, it held some sort of valid dealership and/or sales representation agreement in Puerto Rico and the Caribbean for ARCO and NOVA under some terms, still to be fully defined, under which they engaged in business relations for the sales of EPS products in Puerto Rico and the Caribbean. Thus, we find there is a likelihood plaintiff will prevail on the merits. We explain.

### 1.     Law 75 - Dealer/Distributor.

Puerto Rico's Law 75, and insofar as Law 21, which was enacted on equal footing for sales representatives, governs the business relationship between principals and the locally appointed distributors who market their products. See <u>Caribe Indus. Systems, Inc. V. National Starch and Chemical Co.</u>, 212 F.3d 26, 29 (1st Cir. 2000); <u>Irvine v. Murad Skin Research Labs, Inc.</u>, 194 F.3d 313, 317-18 (1st Cir. 1999). In order to avoid the inequity of arbitrary termination of distribution relationships once a distributor has

developed a local market for the principal's products or services, Law 75 limits the principal's ability to unilaterally end the relationship except for "just cause." P.R. Laws Ann. Tit. 10, § 278a. *See* Matosantos Commercial Corporation v. SCA Tissue of North America, 2004 WL 1778279 (D. Puerto Rico 2004).

Law 75 defines a "dealer" at 10 L.P.R.A. § 278(a) as follows:

a person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service.

A "Dealer's Contract" is defined in § 278(b) as a:

relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

*See generally* Linea Aéreas Costarricenses, S.A. v. Caribbean General, Inc., 682 F.Supp. 117, 121 (D. Puerto Rico 1988); González v. Brown Group, 628 F.Supp. 436, 439 (D. Puerto Rico 1985).

Trial courts have discretion to apply a series of factors (facts and circumstances surrounding the supplier/distributor/sales relationship) which determine whether or not relationship is protected by Law 75. Marina Industrial, Inc. v. Brown Boveri Corp., 114 D.P.R. 64 (1983) (*relying* on Warner Lambert Company v. Tribunal Superior, 101 D.P.R. 378 (1973)). The Puerto Rico Supreme Court has established eight factors (guideposts) to determine whether the claimant has acquired protected status:   (1) activities necessary to the transportation of the products from the manufacturer to the

consumer or to some point in between; (2) publicity; (3) market coordination; (4) merchandise delivery; (5) collections; (6) keeping inventory; (7) promotion; (8) closing of sales contracts.   No single factor is deemed to be conclusive.   Accessories & Communication Systems, Inc. v. Nortel Cala Inc., 85 F.Supp.2d 95, 98 (D. Puerto Rico 2000).   Law 75 is to be liberally construed in favor of finding the distribution relationship.  *See, e.g.*, Computec Systems Corp. v. General Automation, Inc., 599 F.Supp. 819, 826 (D. Puerto Rico 1984) (where a distributor sued for slander of business reputation:  "[t]he Act provides for a liberal interpretation in furtherance of the remedial considerations behind it.")  Law 75 provisions were intended to protect Puerto Rico's dealers from the harm caused when a supplier arbitrarily terminates a distributorship once the dealer has created a favorable market for the supplier's products, "thus frustrating the legitimate expectations and interests of those who so efficiently carried out their responsibilities," Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st  Cir. 1988). The Act has been described as "very much a 'one-way street' designed to protect dealers from the unwarranted acts of termination by suppliers," Nike Int'l Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235, 1237 (D. Puerto Rico 1988).

Moreover, the First Circuit Court in Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo, 96 F.3d 10 (1st Cir. 1996), stated that "[a]lthough 'non-exclusive distributors are entitled to protection under Law 75,' [i]t is equally true ... that Law 75, does not operate to convert non-exclusive distribution contracts into exclusive distribution contracts." *Id.* at 14 (citing General Office Products v. Gussco Manufacturing, Inc., 666 F.Supp. 328, 331 (D. Puerto Rico 1987) and Vulcan Tools of

Beatty Caribbean, Inc. v. NOVA Chemicals, Inc.
Civil No. 08-2259 (ADC-CVR)
Opinion and Order
Page 21

Puerto Rico v. Makita U.S.A., Inc., 23 F.3d 564, 569 (1st Cir. 1994)); *see also* Innovation

Marketing v. Tuffcare Inc., 31 F.Supp. 2d 218, 221 (D. Puerto Rico 1998).

Furthermore, the Court in Borschow, 96 F.3d at 14, citing Vulcan Tools, 23 F.3d

564, 569, explained that "the 'established relationship' between dealer and principal is

bounded by the distribution agreement, and therefore the Act only protects against

detriments to contractually acquired rights." "If the terms of a contract are clear and

leave no doubt as to the intentions of the contracting parties, the literal sense of its

stipulations shall be observed." 31 L.P.R.A. § 3471. "Under Puerto Rican law, an

agreement is 'clear' when it can 'be understood in one sense alone, without leaving any

room for doubt, controversies or difference of interpretation....' " Innovation, 31

F.Supp. 2d at 221; Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66,

69 (1st Cir. 1995).

Where a contractual term providing for "non-exclusive" distributorship is clear

and unambiguous, there is no need to consider extrinsic evidence of promise to limit

number of distributors even absent contractual integration clause. Innovation, 31

F.Supp. 2d at 221; Vulcan Tools, 23 F.3d at 564-68, 569 (Law 75 did not prevent

supplier from establishing additional distributorship in Puerto Rico where

non-exclusive distributor was already operating even if existing distributor suffered

economic harm as result). It is well settled law that where a contract is unambiguous, its

literal meaning must be applied.  31 L.P.R.A. § 3471.

Turning to the instant case, plaintiff Beatty has at least established *prima facie*

and at a minimum at this stage being a dealer subject to the protections and remedies

afforded by Law 75, because, among other things, the existence of a verbal distribution agreement, which exclusivity is in controversy and would require further evidence on the merits, if plaintiff Beatty attempts to establish same. Additionally, all factors to be considered in determining the existence of a dealer or distributor under Law 75 were discussed. *See generally* Au-Port, Inc. v. MBR Industries, Inc., 772 F.Supp. 1301 (D. Puerto Rico 1991); Borg Warner International Corp. v. Quasar Company, 138 D.P.R. 60 (1995); Roberto Gómez, Inc. v. Oxford Industries, Inc., 122 D.P.R. 115 (1988).

To this effect, the testimony of Mr. Leslie Beatty indicated that at times, and insofar as the Dominican Republic products, Beatty assumed the risk, including billing and collection of the EPS from NOVA. The six percent (6%) discount received was to cover the five percent (5%) commission and the credit risk that NOVA would not assume in such market.

On the one hand, NOVA indicated Beatty did not maintain any warehouse for the products nor was required to held an inventory of such products. On the other hand, it is uncontested NOVA did not have a market for Puerto Rico or the Caribbean islands when Beatty started doing business with said company and NOVA was not selling any of its products in the Caribbean islands in the expandable polystyrene and/or Dylite. In addition, Beatty incurred in expenses of keeping an office facilities in Puerto Rico, marketing and promoting of the products, selling of the products, telephone and communication with clients, follow-up of the orders and incurred in travel and lodging expenses to the clients in the Caribbean islands. Moreover, Beatty sought clients and monitored and arranged shipments.

## 2.    Law No. 21 - Sales Representation.

Article 6 of Law 21, 10 L.P.R.A. § 279(e) provides a sales representative with a provisional remedy pending litigation to continue in all its terms, the relation established by the sales representative agreement and/or to abstain to conduct any act or omission in prejudice thereof. As a matter of law, trial courts under the First Circuit Court of Appeals considering granting preliminary injunctive may use in considering the injunctive relief the "quadripartite" test as established in <u>Narragansett Indian Tribe</u>, 934 F.2d at 5. *See generally* <u>A.M. Capen's Co., Inc. v. American Trading and Production Corporation</u>, 74 F.3d 317, 322-23 (1st Cir. 1996) (authorizing the use of the test in a Law 75 claim); <u>Innovation,</u> 31 F.Supp. 2d at 222 (same).

Local Law 21, 10 L.P.R.A. § 279 *et seq*., prohibits a principal from terminating its agreement with an exclusive sales representative without just cause. 10 L.P.R.A. § 278. Law 21 is modeled after the Dealer's Contract Law, also known as Law 75, and it is well settled that applicable jurisprudence to Law 75 is also of application in controversies as per Law 21.

While Law No. 75 was designed to protect Puerto Rican "dealers" from a manufacturer's arbitrary termination or ending their commercial relationship with the Puerto Rican distributors who had prior thereto developed a market for their products. <u>Medina & Medina v. Country Pride Foods, Ltd.</u>, 858 F.2d 817, 820 (1st Cir. 1988), Law No. 21 was enacted for sales representatives protection.

Resembling Law 75, Law 21 protects Puerto Rico sales representatives from arbitrary terminations after they create a market for their principals. An essential

element of a Law 21 claim is the existence of an "exclusive sales representation contract" entered after December 5, 1990. 10 L.P.R.A § 279.

Law 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract of **an exclusive nature**, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." 10 L.P.R.A. § 279(a) (Emphasis supplied). The law fails to define when a sales representative relationship is considered "exclusive," and local courts have yet to interpret its meaning. However, when interpreting contracts pursuant to Act 75, courts have noted that exclusivity is generally apparent either from the contract or from the arrangements agreed upon between the parties. R.W. Intern. Corp. v. Welch Food, Inc., 13 F.3d 478 (1st Cir. 1994); Ballester Hermanos, Inc. v. Campbell Soup, Co., 797 F.Supp. 103, 105 (D. Puerto Rico 1992).

In Innovation, 31 F.Supp 2d. at 221, quoting Triangle Trading Co., Inc. v. Robroy Industries, Inc., 952 F.Supp. 75, 78 (D. Puerto Rico 1997), aff'd, 200 F3d. 1 (1st Cir. 1999), this District Court explained that "[t]he forgoing legal provisions clearly reflect that the determination of whether a particular plaintiff is a 'dealer' under Act 75, or a sales representative under Act 21, is essentially a fact-specific one, which can rarely be rendered based on the pleadings alone."

### 3. Application to this Case.

As previously stated, "[t]he sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New

Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (*citing* Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).

One of the factors which this court must consider in evaluating plaintiff's request for injunctive relief is its interests. Cobos Liccia v. Dejean Packing Co., 124 D.P.R. 896 (1989); Picker, Inc. v. Kodak, 826 F.Supp. 610,  614 (D. Puerto Rico 1993). The Puerto Rico Sales Representatives' Act, 10 L.P.R.A. §279, provides for protection as to exclusive relationship and/or agreements.  Exclusivity has not been fully established by plaintiff Beatty in this civil action, solely argued, testified by Mr. Leslie Beatty and rebutted by the testimony of Mr. Juan Carlos Avila for NOVA. Plaintiff Beatty was not able to fully establish the exclusivity of the contract either with ARCO or with NOVA once NOVA was able to present evidence as to its general policy of not granting exclusivity. This matter will be further elucidated after conclusion of discovery and not at this stage of preliminary injunction request.  Still, as to rebuttal of exclusivity by NOVA, Mr. Avila's testimony was inconclusive since he relied on comparing the terms of the 1984 written and expired contract between Arco and Beatty.  Mr. Leslie Beatty's testimony of being the only and sole distributor for Arco's and NOVA's products through out the years was thus unrebutted.

Even though the statutes at issue do not require a finding of likelihood of success as a prerequisite of an injunction, this will certainly affect the weight of the parties' interest and the injunction effect on the statutory policies.

Under the facts pled in Beatty's complaint, the testimonies presented and evidence adduced, plaintiff has demonstrated, at least the minimum, its likelihood of

Beatty Caribbean, Inc. v. NOVA Chemicals, Inc.
Civil No. 08-2259 (ADC-CVR)
Opinion and Order
Page 26

success on the merits in this action even after NOVA was able to present testimony of some of its executive and officers. Defendant NOVA's evidence was rather addressing the nature of the agreement that it considers governs the relation between the parties, not geared towards likelihood of success on the merits or the "just cause" to modify by reducing the commission rate of the Sales Representative Agreement. Towards this attempt, NOVA presented the testimonies of three (3) witnesses, Messrs. Susamy, Stoffa and Avila. Still, nothing in their testimonies dissuades this United States Magistrate Judge from finding Beatty has shown, at least at this stage, a likelihood of success on the merits. These witnesses were not privy to any verbal agreement held by Beatty with ARCO or with NOVA prior to their tenure to their positions. In fact, Mr. Avila testified neither him nor the corporation had a copy of the 1984 written agreement with ARCO and it was Mr. Leslie Beatty who provided a courtesy copy upon request. None of these witnesses could rebut the testimonies of Mr. Leslie Beatty and of Mr. James Beatty regarding the business relations under a verbal agreement that ARCO or NOVA, respectively, had with Beatty prior to their tenure at either ARCO or NOVA. What these witnesses indeed corroborated was that there was a prior existent and on-going relation with Beatty both at ARCO and with NOVA; that Beatty was considered the sales representative for EPS products in Puerto Rico and some Caribbean Islands even before these witnesses initiated their tenures with their respective companies (ARCO and NOVA); and up to the time this civil action initiated none of them had knowledge nor had a copy of the 1984 written contract by which defendant NOVA is now attempting to govern the relation with Beatty.

The note of Mr. Beatty when accompanying copy of the 1984 contract upon request of NOVA was of it being "the only formal agreement that we have is the one dated November 1984, with ARCO Chemical Company."  Mr. Avila's testimony as to receipt of the copies, as well as the note of including same as the only formal agreement, need not be construed as Mr. Beatty relying in that contract as the one existing between the parties, now Beatty and NOVA.  **Joint Exhibit 1.**

Beatty has made a sufficient preliminary showing to convince the Court, at this stage, it may ultimately prevail on the merits of its causes of action under Law 75 and/or Law 21 insofar as being considered sales representative for EPS products in Puerto Rico and Caribbean, except for Cuba.

Considering the evidence and the testimonies presented by plaintiff Beatty in regards to the existence of prior business relations with ARCO and with NOVA under verbal agreements, as well as defendants' witnesses acknowledgments of such an existent prior relationship, regardless of its terms, plaintiff has established, at least *prima facie*, having a cause of action under Law 75 and/or Law 21 which may prevail on the merits.[4]

Insofar as the determination of being an exclusive vs. a non-exclusive representative, this determination is not relevant to determine injunctive relief under Law No. 75 and will be reserved for the trial on the merits after discovery has concluded.

---

[4] The controlling jurisprudence further compels the conclusion that Beatty has a substantial likelihood of success on the merits of its complaint to permanently enjoin NOVA's conduct with respect to at least a non-exclusive agreement. *See* Draft-Line Corp. v. Hon Company, 781 F.Supp. 841 (D.Puerto Rico 1991), *aff'd* 983 F.2d 1046 (1ˢᵗ Cir. 1993) ("A claim for impermissible termination or impairment of a dealership contract under section 278 has two essential elements: the contract existing between the parties was impaired or terminated without just cause and there were resulting damages.").

### 3.  Defendant NOVA has Impaired the Distribution Relationship.

A defendant is subject to the application of Law No. 75 and Law No. 21 when it performs acts, "detrimental to [*i.e.*, impairs] the established [distribution] relationship." 10 L.P.R.A. § 278a-1.   Defendant NOVA acted in a manner detrimental to its relationship with plaintiff Beatty, and thereby impaired the existing relationship between them, as proscribed by 10 L.P.R.A. § 278a-1(b)(2), during the agreement, as set forth in the above findings of fact, when it unilaterally altered the terms agreed upon in the reduction of the commission as to sales of products to customers in Puerto Rico and the Caribbean; imposing the new commission claiming there was a need for parity in the market of Latin American, without considering that other areas in the territory held by plaintiff Beatty were subject to a previous agreement with said party, which was not necessarily present in its relation with new and additional representatives.

### 4.  No Just Cause Established.

10 L.P.R.A. § 278a-1 allows a principal or grantor [defined in § 278(c) as a "person who executes a dealer's contract with a dealer"] to terminate a dealer's or distributor's contract only for "just cause," namely, the "nonperformance of any of the essential obligations of a dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interest of the principal or grantor in promoting the marketing or distribution of the merchandise or service." 10 L.P.R.A. § 278(d).

The provisions of 10 L.P.R.A. § 278a-1 specifically provides what just cause is not:

For the purposes of this chapter and specifically for the effects of section 278a:

(a) The violation or nonperformance by a dealer of any provision included in the dealer's contract to prevent or restrict changes in the capital structure of the dealer's business, or changes in the managerial control of said business, or the manner of form of financing the operation, or to prevent or restrict the free sale, transfer or encumbrance of any corporate action, participation, right or interest that any person could have in said distribution business, shall not be considered as being just cause unless the principal or grantor shows that such nonperformance may affect, or has truly and effectively affected the interests of such principal or grantor in an adverse or substantial manner in the development of the market, distribution of the merchandise or rendering of services;

(b) it shall be presumed, but for evidence to the contrary, that a principal or grantor has impaired the existing relationship in any of the following cases:

(1) When the principal or grantor establishes facilities in Puerto Rico for the direct distribution of merchandise or the rendering of services which were previously in the charge of the dealer;

(2) when the principal or grantor establishes a distribution relationship with one or more additional dealers for the area of Puerto Rico or any part of said area in conflict with the contract existing between the parties;

(3) when the principal or grantor unjustifiably refuses of fails to fill the order for merchandise sent to him by the dealer in reasonable amounts and within a reasonable time;

(4) when the principal or grantor unilaterally and in an unreasonable manner varies the shipping methods or the manner, conditions or terms of payment for the merchandise ordered, to the prejudice of the dealer.

(c) The violation or nonperformance by the dealer of any provision included in the dealer's contract fixing the rules of conduct or distribution quotas or goals because it does not adjust to the realities of the Puerto Rican market at the time of the violation or nonperformance by the dealer shall not be deemed just cause.  The burden of proof to show the

reasonableness of the rule of conduct or of the quota or goal fixed shall rest on the principal or grantor.

NOVA proffered in its letters, to decrease commissions in a unilateral manner as to Beatty, a series of reasons which it considered appropriate, namely, the EPS business needed to improve its financial performance; NOVA had completed a series of financial adjustments to minimize costs; and NOVA was bringing parity with its other agents in Latin America. **Joint Exhibit 6**.

The agreements testified by plaintiff Beatty were not reduced to writing. Defendant NOVA avers on the other hand the 1984 written one-year expired agreement between Beatty and ARCO should govern.  The verbal nature of the agreements is not dispositive since a relationship may be protected under the dealers' and/or sales representatives' acts even if the parties did not commit same to writing.

Thus, there is a controversy of fact as to the reasons offered by defendant NOVA to reduce the commission.  Plaintiff Beatty objected to same indicating the parity in the market attempted by NOVA did not contemplate the lack of similarity in the Puerto Rico and Caribbean market vis a vis the Latin America market, including Brazil. Additionally, a parity in the markets needs to take into account the existence of prior agreements with a distributor and/or representative with an agreed upon commission of five percent (5%) versus newly appointed representatives or distributors.

**b.  Irreparable Harm.**

It has been held that "irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." <u>Charlesbank Equity Fund II Ltd. v. Blinds</u>

To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) (*citing* Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004)). The burden is on the movant to demonstrate that the denial of preliminary injunctive relief is likely to cause irreparable harm and such showing must be "grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." ESSO, 327 F.Supp.2d at 130-131.[5]

Mr. James Beatty, as General Manager, testified, the reduction in commission to three percent (3%) presents approximately a forty percent (40%) reduction of income for Beatty. Mr. James Beatty considered such a reduction in revenues as detrimental. Still, the record shows that we are not only dealing with a purely economic loss which may be compensated once and if plaintiff Beatty prevails on the merits.  Rather, plaintiff's own actions show it is able to surpass, at least temporarily, this economic harm.  Plaintiff Beatty has agreed already with defendant NOVA to the reduction in commission on a temporary basis.  As of July 1, 2008, when the reduction was to take effect, plaintiff Beatty avers in the complaint the reduction from five percent (5%) to three percent (3%) would constitute a yearly loss to Beatty of approximately $81,000.00 on commissions received during the year 2007.  (*Complaint ¶¶ 11, 19*).

Beatty has not demonstrated that, absent injunctive relief, it will suffer irreparable injury, solely a financial loss of approximately forty percent (40%) of its

---

[5] Article 6 of Law 21, 10 L.P.R.A. § 279(e) provides a sales representative with a provisional remedy pending litigation to continue in all its terms, the relation established by the sales representative agreement and/or to abstain to conduct any act or omission in prejudice thereof. As a matter of law, trial courts under the First Circuit Court of Appeals considering granting preliminary injunctive may use in considering the injunctive relief the above "quadripartite" test as established in Narragansett Indian Tribe, 934 F.2d at 5. *See generally* A.M. Capen's Co., Inc. v. American Trading and Production Corporation, 74 F.3d 317, 322-23 (1st Cir. 1996) (authorizing the use of the test in a Law 75 claim); Innovation Marketing v. Tuffcare Inc., 31 F.Supp. 2d 218, 222 (D. Puerto Rico 1998) (same).

income which it had agreed with defendant NOVA to temporarily withhold.  (*Trans. 5-18-2009, p. 42*).

Assuming the above constitutes "injury", it can be repaired by means other than an injunction.  An injunction --of any kind–– should not be issued in this case because of the simple fact that plaintiff Beatty has available alternative legal remedies to redress its legal grievance and it has failed to show that any "urgent" or immediate equitable relief should issue at this juncture of the case.  Moore's Federal Practice 3D § 65.36 [3].  Picker, Int'l, 826 F. Supp. at 611.  Its alleged injuries, which involve loss of income, may be compensated with a monetary award.  This fact alone precludes granting of the injunctive relief.  Freightliner, L.L.C. v. Puerto Rico Truck Sales, Inc., 399 F.Supp.2d 57, 77 (D. Puerto Rico 2005); Puerto Rico Conservation Foundation v. Larson, 797 F. Supp. 1066, 1069 (D. Puerto Rico 1992); Luis Rosario, Inc. v. Amana Refrigeration, Inc., 733 F. 2d at 174.   Loss of income, without more, does not establish irreparable harm.  Freightliner, 399 F.Supp.2d at 77.

Beatty's attempt to obtain injunctive relief at this time lacks competent evidence concerning its allegations of irreparable harm and for this reason alone should not prosper. Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004) (*citing* Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8 (1st Cir. 2000) (failure to show irreparable harm is sufficient grounds for denying preliminary relief even if the other requirements of the preliminary injunction standard are met); Freightliner, 399 F.Supp.2d at 77.

### c.  Balance of the Equities, whether Injury Outweighs Any Harm the Granting  of Injunctive Relief Would Cause to Defendant.

The balancing of the relevant equities (hardship to the movant if injunctive relief is not granted weighed against hardship to the non-movant if injunctive relief is granted) militates against Beatty's position now claiming irreparable injury.  For this United States Magistrate Judge to determine whether the balance of the equities in this matter favors Beatty, it is necessary only to review the exhibits introduced at the hearing and review the testimonies.

The potential harm to Beatty is not irreparable, solely financial, and in fact would consist of economic damages easily recoverable, as above explained.  The harm from not granting the injunctive relief does not outweigh the harm that would be inflicted to NOVA.  If the relief is granted, NOVA will  be barred from distributing and selling its products to other representatives or directly on the basis of a non-exclusive business relation with Beatty. Still, if injunctive relief is not granted, Beatty may recoup from NOVA, once it prevails on the merits, all the commissions from sales reduced from the five percent (5%) to the three (3%) actually being paid, as well as any commission difference from the direct sales made by NOVA and/o other assigned representatives by NOVA, in the event that Beatty is able to establish on the merits entitlement to an exclusivity as to EPS products.  Thus, the balancing of the equities in this case favors NOVA.

Beatty Caribbean, Inc. v. NOVA Chemicals, Inc.
Civil No. 08-2259 (ADC-CVR)
Opinion and Order
Page 34

### d.    Public Interest.

Finally, the public interest heavily favors plaintiff Beatty.  The public interest is clearly expressed in the legislative history of Law 75:  "Law 75 was enacted in order to protect the interests of commercial distributors operating in Puerto Rico `from the harm caused when a supplier arbitrarily terminates a distributorship once the dealer has created a favorable market for the supplier's product.'" R.W. Int'l Corp. v. Welch Food, Inc., 13 F.3d 478, 482 (1st Cir. 1994)  ; Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st Cir. 1988); Warner Lambert Co. v. Superior Court of Puerto Rico, 101 D.P.R. 378 (1973) (Official Translation) (1973)." See Vulcan Tools of Puerto Rico v. Makita USA, Inc., 23 F.3d 564, 568 (1st Cir. 1994).

As to Law 75:

> The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers ... or without fully eliminating them, such enterprises gradually reduce and impair the extent of their previously established relationships, as soon as these have created a favorable market and without taking into account their legitimate interests.

Statement of Motives of Act 75, 1964 P.R. Laws, 4th Reg.Sess. 231.  "Because the legislature of Puerto Rico considered traditional principles of contract law insufficient to protect the rights of dealers, it passed Law 75 to safeguard these rights and stabilize dealership relationships." Vulcan Tools at 568 (1st Cir. 1994), citing Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st Cir. 1988) (from Official Translation).

"By enacting [Law 75], the Puerto Rico legislature showed that it would no longer tolerate the many cases of big (mostly mainland) companies usurping the market

infrastructure created by local entities who, in misreliance on the supplier's conduct, assumed they were establishing a long term distributorship." Nike International, Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235, 1238 (D.P.R. 1988).[6]

Law No. 21 was enacted as an offspring of the Dealers' Contract Law to protect sales representatives and other local agents who fell short of the requirements for dealership status under Law No. 75. *See* Innovation Mktg. v. Tuffcare Inc., 31 F.Supp.2d 218, 220 & n. 1 (D. Puerto Rico1998); Tavárez v. Champion Prods., Inc., 903 F.Supp. 268, 271 (D. Puerto Rico 1995). It is modeled closely on Law 75 and, with limited exceptions, provides identical remedies. *See* Codecom, Inc. v. Alcatel Standard, S.A., 103 F.Supp.2d 65, 67 & n. 4 (D.Puerto Rico 2000).[7] Law No. 21, however, applies only to sales representative contracts formed after December 5, 1990. Innovation Mktg., 31 F.Supp.2d at 220; Tavárez, 903 F.Supp. at 272.  *See* Re-Ace, Inc. V. Wheeled Coach Industries, Inc., 363 F.3d 51 (1st Cir. 2004).

---

[6] *See* La Playa Santa Marina, Inc. v. Chris-Craft Corp., 597 F.2d 1 (1st Cir.1979) (evidence sustained an award for goodwill of the Dealer's business as well as a statutory award equal to five times the annual average net profits); DeMoss v. Kelly Services, Inc., 493 F.2d 1012, 1015 (1st Cir.1974) ("The availability of temporary relief under Article 3A [the Dealers' Contracts Law of Puerto Rico] is not tied to a showing of irreparable injury . . ."). Tamachi, Inc. v. Chrysler Plymouth of de Ponce, 651 F.Supp. 1359, 1360 n.1 (D. Puerto Rico 1987) (principals cannot impair dealership contract or refuse renewal without just cause); Francisco Garratón, Inc. v. Lanman & Kemp-Barclay & Co., Inc., 559 F.Supp. 405, 409 (D. Puerto Rico 1983) (public policy re quires that temporary relief be granted liberally); Felix A. Rodríguez, Inc. v. Bristol-Myers Co., 281 F.Supp. 643 (D. Puerto Rico 1968); San Juan Merc. v. Canadian Transport Co., 108 D.P.R. Dec. 211 (1978) (establishing a market and client base legally justifies award of damages to a terminated dealer). *See also* Richard M. Krumbein, *Protectionism in Puerto Rico: The Impact of the Dealers' Contracts Law on Multinational Companies Planning Operations in Puerto Rico*, 25 Case W. Res. J. Int'l L. 79, 118 (1993).

[7] Roberco, Inc. Y  Roberto Colon v. Oxford Indus., Inc., 122 D.P.R. 115 (1988).

The distinction between a Law No. 75 dealer and a Law No. 21 sales representative is essentially a fact-specific one. *See* <u>Innovation Mktg</u>., 31 F.Supp.2d at 221; <u>Triangle Trading Co. v. Robroy Indus., Inc.</u>, 952 F.Supp. 75, 78 (D. Puerto Rico 1997). [8] Law No. 21 does not directly proscribe forum selection clauses.[9]

Law No. 21 defines a sales representative as an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico. It includes the figure known as manufacturer's representative. 10 P.R. Laws Ann. § 279(a); <u>Orba, Inc. v. MBR Indus., Inc.</u>, 49 F.Supp.2d 67, 71 (D. Puerto Rico 1999). A sales representation contract, in turn, is defined as follows:

> The agreement established between a sales representative and a principal, through which ... the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and coordination and to pay the previously-accorded commission or remuneration. 10 P.R. Laws Ann. § 279(c).

This Court may protect the profound public interest in the outcome of this proceeding by issuing the preliminary and provisional injunctive relief requested by Beatty so as to avoid violations of the testified and unrebutted at this time evidence of an exclusive verbal sales representation agreement, but plaintiff Beatty had to meet all the

---

[8] The distribution of casings, films and equipment of supplier was examined under Law No. 75 when operations were concentrated in Puerto Rico, although merchandise shipped to the Dominican Republic.   <u>Beatty Sales Inc., v. Viskase Sales Corp.</u>, 241 F.Supp.2d 123 (D. Puerto Rico 2003).

[9] <u>Miró González v. Avatar Realty, Inc.</u>, 177 F.Supp.2d 101, 105 (D. Puerto Rico 2001) (citing <u>Triangle Trading Co., Inc. v. Robroy Industries, Inc.</u>, 952 F.Supp. 75, 81 (D. Puerto Rico 1997).

four (4) prongs for an injunctive relief to be issued in its favor.  But, even if full credibility is afforded to the testimony of Mr. Leslie Beatty as to the exclusive nature of the verbal sales representation agreement,[10] the requisite of irreparable harm would still prevent an injunctive request to be granted under Law 21.

## CONCLUSION

In view of the foregoing, this United States Magistrate Judge opines plaintiff Beatty has established the prerequisites for entitlement to injunctive relief as to two (2) of the four (4) prongs for the issuance of such relief, but not as to balancing of the equities and irreparable injury. Thus, after a careful review premised on above considerations, the Court **DENIES** the request for preliminary injunction.[11]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of July 2009.

s/**CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**

---

[10]   Law No. 21 fails to define when a sales representative relationship is considered exclusive, and courts have yet to interpret its meaning.  IOM Corp. v. Brown-Forman Corp., 553 F.Supp.2d 58 (D. Puerto Rico 2007).  In such lighting, Beatty presented testimony as to being the sole and only distributor for both ARCO and NOVA as to the EPS product and such testimony remained uncontested by defendant NOVA.  Whether being the only or the sole representative may be legally construed as exclusive representation, falls on another footing.

[11]   This action will proceed before the undersigned United States Magistrate Judge as the presiding Judge under a scheduling order to be discussed with the parties at a Scheduling Conference to be scheduled by separate Order.