IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BEATTY CARIBBEAN, INC.,

    Plaintiff,

    v.                                  CIVIL NO. 08-2259 (CVR)

NOVA CHEMICALS, INC.,

    Defendant.

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Beatty Caribbean Corporation (hereafter "Beatty"), a corporation with its principal place of business in Puerto Rico filed an action as to defendant NOVA Chemicals, Inc. (hereafter "NOVA"), a corporation with its principal place of business in the state of Pennsylvania for alleged violation of the Puerto Rico statutes Law No.75 and No. 21, respectively, 10 L.P.R.A. §278 *et seq.*; and 28 U.S.C. §1332. The violation claims NOVA impaired the distribution agreement entered into with Beatty as of the beginning of 1990's for the sales and marketing in Puerto Rico and the Caribbean (including Jamaica, Haiti, Trinidad & Tobago, Dominican Republic and Barbados) of chemical products, including since 1995 expandable polystyrene also known as Dylite or in

general "EPS"[1] after an asset purchase acquisition of Arco Chemicals (hereafter "Arco"), the previous producer of EPS and/or Dylite (the "Asset Purchase Agreement"). Beatty had indicated also that, since 1973, it held a business relation with Arco.

Beatty avers that NOVA's decision to reduce the commission paid to Beatty from the five percent (5%) previously paid to three percent (3%) to begin on July 1, 2008 was done without "just cause" and, thus, hindering the benefits from the successfully established market Beatty has created over the years pursuant to its verbal agreements with Arco and with NOVA, for which Beatty considers this action by NOVA a violation of the provisions of Puerto Rico Dealership's Act, Law No. 75, 10 L.P.R.A. §§ 278 *et seq*. and/or Puerto Rico Sales Agents' Act, Law No. 21. (*Complaint, Docket No. 1*).

After this Court entertained the preliminary injunction and denied same for lack of irreparable damage and after discovery proceedings took place, defendant NOVA submitted a motion for summary judgment on July 7, 2010. (Docket No. 66). Plaintiff Beatty filed its Opposition (Docket No.74), NOVA presented a reply and finally Beatty submitted a short sur-reply. (Docket Nos. 81 and 83). NOVA's main argument is plaintiff Beatty's cause of action is not protected under Law No. 75 for failing to comply with the definition of a "dealer" nor with the factors determined by the Highest State Court in its interpretation, nor is Beatty covered by Law No. 21 for not being in an exclusive commercial relationship for the sale of NOVA's products.

---

[1] Polystyrene or polyethylene is a plastic polymer that is sold in solid, as little pellets, and the molder or the user of the product would melt it and then form some type of a solid item with it, could be a plastic toy. Expandable polystyrene (hereafter "EPS") is unique in that it is a solid polystyrene but in each side there is a blowing agent and when the material is processed with steam, it puffs up and then it is again processed with steam in a mold to take any shape. (Commonly referred as styrofoam, which is a DOW trade name for a particular product for construction).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id*. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id*.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835

F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

### UNCONTESTED/CONTESTED FINDINGS OF FACTS.

It is uncontested that since September 1, 1984, Beatty executed a sales representative agreement with Arco, the predecessor in interest as to the commercial relationship at issue with NOVA. Agreement, *Exhibit 1*; testimony of Mr. Leslie Beatty at preliminary injunction hearing, *Docket No. 22*); Mr. Leslie Beatty's depo., *Exhibit 2*, pp. 27-28.

Said sales agreement with Arco was non-exclusive, with its territory in the Caribbean, and the product being sold was EPS. The sales agreement would expire after one (1) year. Both parties continued their commercial relationship thereafter, which had also provided for the payment of a commission in its Schedule "A" of five percent (5%) of the invoice price, adjusted, if necessary to FOB: U.S. Port and calculated net 30 days from date of Bill of Lading. *Exhibit 1; Docket No. 22, pp. 69-70, 78, 87, 92 and 112.*

On September 30, 1996, NOVA acquired Arco's EPS business as part of an Asset Purchase Agreement, including all contracts, in which Arco was a party. *Asset/Purchase Agreement, Deft's Uncontested Exhibit 3; transcript, Docket No. 33.*

The contract at issue between Arco and Beatty was not included in the listing of assets received by NOVA. It has also been admitted and verified by Mr. Leslie Beatty's testimony that NOVA had no copy of said contract until 2007 when Mr. Leslie Beatty

provided them with a copy. *Mr. Leslie Beatty's testimony preliminary injunction, p. 78; Joint Exhibit 1.*

NOVA submits the clauses and provisions of the 1984 contract between Arco and Beatty in support of its request for summary judgment, which clauses indicated the five percent (5%) commission and the non-exclusivity of the sales representation, among others.

Notwithstanding NOVA's contention, the non-controverted factual situation established that there is no written agreement between Beatty and NOVA. Mr. Leslie Beatty has indicated the sales representative agreement between the parties upon expiration of the one-year contract of 1984 was verbal. He also testified as to a verbal agreement between NOVA and Beatty in the early 1990's for the sale of polyethylene and polystyrene resins and other plastics.[2] *Mr. Leslie Beatty's testimony preliminary injunction, pp. 7, 73.*

Succinctly, there has never been a written contract between NOVA and Beatty and their commercial agreement has been verbal. It is Beatty's position it held an exclusive representation of NOVA in the territory of Puerto Rico and the Caribbean, as well as having held since the 1970's an exclusive verbal agreement with Arco.

---

[2] During all the years doing business, Beatty has been the sole representative for the particular products within the specified territories, to wit; Puerto Rico and the Caribbean islands. Up until recently, NOVA had not appointed another distributor for the products in Beatty's described territory nor did NOVA attempt until recently to sell directly NOVA's products in the territory. Whether the relation is exclusive or not, it is to be determined at a later stage subject to credibility determination.

It was not until 1984, after a fourteen (14) year relationship with Arco, that some written sales representative agreement was signed with Beatty which held a non-exclusivity clause. Upon expiration of said one-year contract, for the next twelve (12) years, the relationship between Arco and Beatty continued under the verbal and usual exclusive agreement. *Testimony preliminary injunction, pp. 33, 78.*

NOVA's witness testified at the preliminary injunction hearing, through counsel Claudia García, the 1984 expired contract between Arco and Beatty was not in the list of agreements assigned by Arco to NOVA in their 1996 Asset/Purchase Agreement. *Preliminary injunction testimony, pp. 174, 179.*

On one hand, it is NOVA's position that customarily it holds no exclusive commercial relations with any party. *Testimony of Juan Carlos Avila's testimony Sales & Development Director, preliminary injunction hearing, p. 160.*[3] Such inference was made solely for being a customary practice known by Mr. Avila. Meanwhile, Mr. Leslie Beatty, who was privy to the verbal contracts and has personal knowledge, stated to the contrary.

NOVA states, as supporting the grounds of non-exclusivity of its relation with Beatty, having previously sold merchandise directly to clients in Trinidad, in particular to one Rotoplastics who previously purchased directly from DuPont, which NOVA acquired in 1995. NOVA submits such direct sales to clients in the Caribbean market serve as evidence of the non-exclusivity of Beatty's contract. However, the supporting

---

[3] Mr. Juan Carlos Avila began working for NOVA in 2006 as Sales and Development Manager for Latin America for the EPS business.

document for such proposition was withdrawn by NOVA, E*xhibit 5, statement of Mr. Ralph Ross, General Manager of Rotoplastics, Docket No. 71.* Arco had no other distributors in Beatty's territory.

In its opposition to summary judgment, Beatty submits having no prior knowledge that NOVA was carrying out said business of direct sale to customers in its territory. *Mr. Leslie Beatty's depo. 3-11-2010, p. 76; Mr. Leslie Beatty's depo. 3-12-2010, p. 163.*

It is also undisputed that NOVA did not have a market for Puerto Rico or the Caribbean islands when Beatty started doing business with said company and NOVA was not selling any NOVA products in the Caribbean islands in the expandable polystyrene and/or Dylite.

The evidence in support of the motion for summary judgment and in the opposition indeed reflects that, when NOVA acquired Arco's assets, there was no change or alteration in any of the terms and conditions of dealings with Beatty. NOVA's executives testified at the preliminary injunction hearing the aim was to continue with a seamless transition of operations. It was not until 2008, when NOVA engaged in communication with Beatty for a reduction of the five percent (5%) reduction in the commission for its EPS sales.

## LEGAL DISCUSSION

NOVA's contention to request summary disposition is the contract relation with Beatty is not covered by Law No. 75, the Puerto Rico Dealership Act, for which the provisions to protect Beatty as a sales representative should not be applicable. It also

argues that since the contract, if any, should be considered as a non-exclusive, it would neither be covered under Law No. 21, as to sales agent which provisions requires exclusivity.

The case law and the legal analysis provided insofar as Law No. 75 and Law No. 21 would be legally determinative in this action, but first one must find there is no genuine factual dispute as to the contract provisions before examining if summary judgment is appropriate. It would all be dependent on the nature of the contract between Beatty and NOVA, an issue that is highly controverted in this case and essential to the dispute between the parties.

In the instant case, NOVA's discussion for summary disposition at this stage is predicated in its parallel analysis of the 1984 contract between Arco and Beatty to which NOVA was a successor and relying in the provisions therein contained. However, such contract clearly states to be a one-year contract, which by its own terms, would have expired in 1985. There is a genuine controversy of facts on whether such provisions were in fact the ones followed by the parties after expiration of said one-year.

Beatty's contention is that there was a verbal agreement of an exclusive nature which governed their relationship for more than twelve-years thereafter between Beatty and Arco. It has also been clearly established that NOVA could not have relied on such 1984 contract when it continued its relation with Beatty upon acquiring Arco's assets in 1996 since it was not at least until 2007 when a copy of the 1984 contract was provided to NOVA. Even NOVA's own legal counsel, Atty. Claudia García, has indicated such 1984 contract between Arco and Beatty was not found in the list of agreements assigned

by Arco to NOVA in their 1996 Asset/Purchase Agreement or attachments, nor would it had been included if the contract had indeed expired.

NOVA submits the factors to be considered in that Beatty does not hold inventory of its goods for sale, nor makes credit decisions, and has no price-fixing authority should be examined as not falling as a sales representative under Law No. 75 definition of a dealership.

Beatty in opposition submits, as other factors to be considered as a sales representative, that its center of operations for all the work in selling the products is San Juan, Puerto Rico, where its offices are located and all administrative and communications, as well as travel out to conduct sales, purchases, billings and collections are carried out from Puerto Rico. Beatty has also submitted since March 2002 up to the present time, billing is done by NOVA but prior to that date, the billing had been done by Beatty. In support of its dealership protected status, since the early 1990's, the work done by Beatty for NOVA's products entails developing the market, seeking new clients, making sales, monitoring and arranging shipments. It formerly made collections for NOVA, as well as submit quotations in standard NOVA Chemicals' *pro-forma* invoice and handle claims. Mr. Beatty's testimony has consistently been that Beatty provided full service distributor services for the Caribbean for NOVA's products, which included to promote, sell, market, collect, handle claims, since back in the early 1990's and NOVA had no other distributors in the territory handled by Beatty and all dealings and business were channeled and handled by Beatty, including all inquiries which would come through media, channels, magazines, trade magazines and afterward

through the internet. This concept is succinctly stated as "being the eyes, ears and nose of the company in the territory", as well as under the sales agreement with NOVA Beatty not being required to have any inventory of products it was authorized to sell since these were raw material which product was delivered to customers directly, including those in the Dominican Republic. *Mr. Leslie Beatty testimony preliminary injunction, p. 73.*

Insofar as their business relation, NOVA submits Beatty has no authority to: sign contracts on behalf of NOVA, change the terms of sales for NOVA's products, change the sales terms on behalf of NOVA, expand credit on behalf of NOVA. Beatty's opposition avers there is no requirement that Beatty is to keep an inventory of NOVA's products and have a warehouse, while Beatty has no control over the pricing of NOVA's products.

**A. Law No. 75 - Dealership Act.**

Insofar as Puerto Rico's Law No. 75, and insofar as Law No. 21, which was enacted on equal footing for sales representatives, it govern the business relationship between principals and the locally appointed distributors who market their products. See Caribe Indus. Systems, Inc. V. National Starch and Chemical Co., 212 F.3d 26, 29 (1st Cir. 2000); Irvine v. Murad Skin Research Labs, Inc., 194 F.3d 313, 317-18 (1st Cir. 1999). In order to avoid the inequity of arbitrary termination of distribution relationships once a distributor has developed a local market for the principal's products or services, Law No. 75 limits the principal's ability to unilaterally end the relationship except for "just cause." P.R. Laws Ann. Tit. 10, § 278a. *See* Matosantos Commercial Corporation v. SCA Tissue of North America, 2004 WL 1778279 (D. Puerto Rico 2004).

Law 75 defines a "dealer" at 10 L.P.R.A. § 278(a) as follows:

a person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service.

A "Dealer's Contract" is defined in § 278(b) as a:

relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

*See generally* Linea Aéreas Costarricenses, S.A. v. Caribbean General, Inc., 682 F.Supp. 117, 121 (D. Puerto Rico 1988); González v. Brown Group, 628 F.Supp. 436, 439 (D. Puerto Rico 1985). Trial courts have discretion to apply a series of factors (facts and circumstances surrounding the supplier/distributor/sales relationship) which determine whether or not relationship is protected by Law No. 75. Marina Industrial, Inc. v. Brown Boveri Corp., 114 D.P.R. 64 (1983) (*relying* on Warner Lambert Company v. Tribunal Superior, 101 D.P.R. 378 (1973)).

The Puerto Rico Supreme Court has established eight (8) factors that determine whether the claimant has acquired protected status of Law No. 75:

(1) activities necessary to the transportation of the products from the manufacturer to the consumer or to some point in between;

(2) publicity;

(3) market coordination;

(4) merchandise delivery;

  (5) collections;

  (6) keeping inventory;

  (7) promotion; and

  (8) closing of sales contracts.

 No single factor is deemed to be conclusive. *See* Accessories & Communication Systems, Inc. v. Nortel Cala Inc., 85 F.Supp.2d 95, 98 (D. Puerto Rico 2000). Law No. 75 is to be liberally construed in favor of finding the distribution relationship. *See, e.g.*, Computec Systems Corp. v. General Automation, Inc., 599 F.Supp. 819, 826 (D. Puerto Rico 1984) (where a distributor sued for slander of business reputation: "[t]he Act provides for a liberal interpretation in furtherance of the remedial considerations behind it.") Law No. 75 provisions were intended to protect Puerto Rico's dealers from the harm caused when a supplier arbitrarily terminates a distributorship once the dealer has created a favorable market for the supplier's products, "thus frustrating the legitimate expectations and interests of those who so efficiently carried out their responsibilities," Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st Cir. 1988). The Act has been described as "very much a 'one-way street' designed to protect dealers from the unwarranted acts of termination by suppliers," Nike Int'l Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235, 1237 (D.P.R. 1988).

 As indicated in this Court previous Opinion and Order of July 16, 2009, and the events related to the summary judgment and its opposition, Beatty, as the non-movant

party, has established the existence of genuine controversies of facts, among other things, as to the existence and extent of a verbal distribution agreement, which exclusivity is in controversy and would require further evidence. (Docket No. 39).

On the one hand, NOVA submits Beatty did not maintain any warehouse for the products nor was required to hold an inventory of such products. On the other hand, Beatty has argued and established it incurred in expenses of keeping an office facilities in Puerto Rico, marketing of the products, telephone and communication with clients, follow-up of the orders and incurred in travel and lodging expenses to the clients in the Caribbean islands.

In regards to the summary disposition requested by NOVA for Beatty not falling under the umbrella protection of Law No. 75, there are also genuine issues of material fact in controversy as to which was the contract between Arco and Beatty, what were the provisions of the contract in force at the time NOVA acquired Arco's assets, what was the previous contract between NOVA and Beatty, and what was the business relation between Beatty and NOVA from 1996 through 2008 when NOVA for the first time attempted to reduce the customary five percent (5%) commission that is considered as impairing said contract.

Since there is no written contract in effect as to what was the extent, provisions or understanding of the verbal contract between the parties in the present controversy, once it is ruled and determined based on credibility determination, it would then be legally possible to determine if their business relation may fall under Law No. 75 or Law No. 21, or none.

**B.  Law No. 21 - Sales Representation**.

NOVA has argued summary judgment should be granted upon Beatty's lack of protection as a sales representative for the contract not being exclusive.

Local Law No. 21, 10 L.P.R.A. § 279 *et seq*., prohibits a principal from terminating its agreement with an exclusive sales representative without just cause. 10 L.P.R.A. § 278. Law No. 21 is modeled after the Dealer's Contract Law, also known as Law No. 75, and it is well settled that applicable jurisprudence to Law No.75 is also of application in controversies as per Law No. 21.  While Law No. 75 was designed to protect Puerto Rican "dealers" from a manufacturer's arbitrary termination or ending their commercial relationship with the Puerto Rican distributors who had prior thereto developed a market for their products. Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st Cir. 1988), Law No. 21 was enacted for sales representatives protection. Resembling Law No. 75, Law No. 21 protects Puerto Rico sales representatives from arbitrary terminations after they create a market for their principals. An essential element of a Law No. 21 claim is the existence of an "exclusive sales representation contract" entered after December 5, 1990. 10 L.P.R.A § 279.

Law No. 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract of *an exclusive nature*, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." 10 L.P.R.A. § 279(a) (*Emphasis supplied*). The law fails to define when a sales representative relationship is considered "exclusive," and local courts have yet to interpret its meaning. However, when interpreting contracts pursuant to Act No. 75,

courts have noted that exclusivity is generally apparent either from the contract or from the arrangements agreed upon between the parties. R.W. Intern. Corp. v. Welch Food, Inc., 13 F.3d 478 (1st Cir. 1994); Ballester Hermanos, Inc. v. Campbell Soup, Co., 797 F.Supp. 103, 105 (D. Puerto Rico 1992).

In Innovation, 31 F.Supp 2d. at 221, quoting Triangle Trading Co., Inc. v. Robroy Industries, Inc., 952 F.Supp. 75, 78 (D. Puerto Rico 1997), *aff'd*, 200 F3d. 1 (1st Cir. 1999), this District Court explained that "[t]he forgoing legal provisions clearly reflect that the determination of whether a particular plaintiff is a 'dealer' under Act 75, or a sales representative under Act 21, is essentially a fact-specific one, which can rarely be rendered based on the pleadings alone."

In light of the existence of genuine controversies of material facts as to the existence and extent of the contract between Beatty and NOVA, as it also may apply under above discussed Law No. 75 provisions, the summary disposition of Law No. 21 claims herein rests on issues in controversy and first subject to credibility determination. Thus, summary judgment is not appropriate at this time.

## CONCLUSION

In view of the foregoing, defendant NOVA's request for summary judgment is herein DENIED. (Docket No. 66).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of July 2010.

s/**CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**